# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL R. TIDMARSH, | Case No.: 1:14-cv-00083-REB |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security | |
| Respondent. | |

Pending before this Court is Michael R. Tidmarsh's Petition for Review (Docket No. 1), seeking review of the Social Security Administration's final decision to deny his claims for Social Security Disability and Supplemental Security Income disability benefits for lack of disability. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I.  ADMINISTRATIVE PROCEEDINGS

On or around January 19, 2012, Michael Tidmarsh ("Petitioner") filed an application for Disability Insurance Benefits, as well as Supplemental Security Income. Petitioner alleged disability beginning September 23, 2011. These claims were initially denied on April 3, 2012 and, again, on reconsideration on May 4, 2013. On June 5, 2012, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On July 3, 2013, ALJ MaryAnn Lunderman held a video hearing in Albuquerque, New Mexico, at which time,

**MEMORANDUM DECISION AND ORDER - 1**

Petitioner (then represented by attorney Michael R. Whipple) appeared (in Boise, Idaho) and testified.  Impartial vocational expert, Beth Cunningham, also appeared and testified during the same July 3, 2013 hearing.

On August 1, 2013, the ALJ issued a Decision denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act.  Petitioner timely requested review from the Appeals Council on September 12, 2013.  On January 9, 2014, the Appeals Council denied Petitioner's Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner timely files the instant action, arguing that "[t]he conclusions and findings of fact of the Defendant are not supported by substantial evidence as required by 42 U.S.C. § 405(g) and are contrary to law and regulation."  Compl., p. 2 (Docket No. 1).  Specifically, Petitioner contends that (1) the ALJ erred by failing to properly evaluate the medical evidence; (2) the ALJ failed to properly evaluate whether Petitioner met Listing 1.04; and (3) the ALJ erred in rejecting Petitioner's testimony.  *See* Opening Brief, p. 2 (Docket No. 14).  Petitioner therefore requests that the Court reverse the ALJ's decision or, alternatively, remand the case for further proceedings.  *See* Compl., p. 2 (Docket No. 1).

## II.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).  Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42

**MEMORANDUM DECISION AND ORDER - 2**

U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual

decisions, they must be upheld, even when there is conflicting evidence.  *Hall v. Sec'y of Health,*

*Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

*Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human*

*Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less

than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975);

*Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or

considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole

to determine whether it contains evidence that would allow a reasonable mind to accept the

conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019.

The ALJ is responsible for determining credibility and resolving conflicts in medical testimony

(*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving ambiguities (*see Vincent ex.*

*rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences

logically flowing from the evidence (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.

1982)).  Where the evidence is susceptible to more than one rational interpretation in a disability

proceeding, the reviewing court may not substitute its judgment or interpretation of the record

for that of the ALJ.  *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir.

1985).

With respect to questions of law, the ALJ's decision must be based on proper legal

standards and will be reversed for legal error.  *Matney*, 981 F.2d at 1019.  The ALJ's

**MEMORANDUM DECISION AND ORDER - 3**

construction of the Social Security Act is entitled to deference if it has a reasonable basis in law.

*See id.* However, reviewing federal courts "will not rubber-stamp an administrative decision that

is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying

the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III.  DISCUSSION

### A.     Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a

sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§

404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within

the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in

substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is

defined as work activity that is both substantial and gainful.  "Substantial work activity" is work

activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a),

416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not

a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA,

disability benefits are denied, regardless of how severe his physical/mental impairments are and

regardless of his age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If

the claimant is not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ

found that Petitioner has not engaged in substantial gainful activity since September 23, 2011,

the alleged disability onset date. (AR 52).

The second step requires the ALJ to determine whether the claimant has a medically

determinable impairment, or combination of impairments, that is severe and meets the duration

**MEMORANDUM DECISION AND ORDER - 4**

requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination

of impairments is "severe" within the meaning of the Social Security Act if it significantly limits

an individual's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).

An impairment or combination of impairments is "not severe" when medical and other evidence

establish only a slight abnormality or a combination of slight abnormalities that would have no

more than a minimal effect on an individual's ability to work.  20 C.F.R. §§ 404.1521, 416.921.

If the claimant does not have a severe medically determinable impairment or combination of

impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the

ALJ found that Petitioner had the following severe impairment: "degenerative disc disease status

post two spinal fusions."  (AR 52-54).

The third step requires the ALJ to determine the medical severity of any impairments;

that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R.

Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the

answer is yes, the claimant is considered disabled under the Social Security Act and benefits are

awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor

equal one of the listed impairments, the claimant's case cannot be resolved at step three and the

evaluation proceeds to step four.  *Id.*  Here, the ALJ concluded that Petitioner's above-listed

impairments, while severe, do not meet or medically equal, either singly or in combination, the

criteria established for any of the qualifying impairments.  (AR 54).

The fourth step of the evaluation process requires the ALJ to determine whether the

claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past

relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is his

**MEMORANDUM DECISION AND ORDER - 5**

ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  20 C.F.R. §§ 404.1545, 416.945.  Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  Here, the ALJ determined that Petitioner has the RFC to perform light work, "except stooping and crouching are limited to occasionally."  (AR 54-60).  Additionally, the ALJ determined that Petition "must be provided the option to sit or stand at will and be allowed to perform his assigned work from either a sitting or standing position."  *Id*

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  If the claimant is able to do other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled.  Here, the ALJ found that Petitioner cannot perform his past relevant work as an ironworker and warehouse worker.  (AR 60).  However, the ALJ further found that there are jobs that exist in significant numbers in the national economy that Petitioner can perform, including office helper (light work), parking lot cashier (light work), room service order clerk (sedentary work), document preparer (sedentary work), and order clerk (sedentary work).  (AR 60-61).  Therefore, based on Petitioner's age, education, work experience, and RFC, the ALJ concluded that Petitioner was not under a

**MEMORANDUM DECISION AND ORDER - 6**

disability as defined in the Social Security Act from September 23, 2011 (the alleged disability onset date), through August 1, 2013 (the date of the ALJ's decision).  (AR 61-62).

**B.     Analysis**

    1.      <u>The ALJ's Consideration of Petitioner's Treating Physicians' Opinions</u>

    The medical opinion of a treating physician is entitled to special consideration and weight.  *See Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989).  Such deference is warranted because the treating physician "is employed to cure and has a greater opportunity to know and observe the individual."  *Id.*  However, a treating physician's opinion is not necessarily conclusive.  *See id.* at 762.  If the treating physician's opinions are not contradicted by another doctor, they may be rejected only for clear and convincing reasons.  *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Even if the treating physician's opinions are contradicted by another doctor, they can only be rejected if the ALJ provides specific and legitimate reasons, supported by substantial evidence in the record, for doing so.  *See id.*  A lack of objective medical findings, treatment notes, and rationale to support a treating physician's opinions is a sufficient reason for rejecting that opinion.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

    Petitioner argues that the ALJ failed to give proper weight to his treating physicians' opinions, including those from (1) Sandra Thompson, M.D., (2) Richard Manos, M.D., and (3) Andrea Wise, DPT.  *See* Opening Brief, pp. 9-16 (Docket No. 14).  The Court addresses each of these arguments below.

            *a.      Dr. Sandra Thompson*

    Dr. Thompson is a pain management specialist.  She has treated Petitioner since February 8, 2013.  (AR 635).  On June 20, 2013, Dr. Thompson completed a "Medical Source Statement,"

**MEMORANDUM DECISION AND ORDER - 7**

diagnosing Petitioner with lower back pain, alongside the following observations: (1) his

prognosis is poor; (2) he experiences constant shooting, aching, sharp, burning pain (6-7 out of

10) with exacerbations; (3) he has neuro-anatomic distribution of pain; (4) he has reduced range

of motion at the lumbosacral joint due to pain; (5) his emotional factors contribute to the severity

of his symptoms and functional limitations; (6) he can sit/stand for 30 minutes at a time; (7) he

can sit for about two hours per day and stand for about two hours per day; (8) he can

occasionally lift/carry 10 pounds; (9) he can occasionally twist and climb stairs; (10) he can

rarely stoop/bend, crouch/squat, and climb ladders;[1] (11) he has limited use of his hands, fingers,

and arms to twist, perform fine manipulations, and reach; (12) he would be "off task" more than

25% of the time; and (13) he is "unable to work."  (AR 59) (citing (AR 634-638)).

  Relevant here, the ALJ assigned "little weight" to Dr. Thompson's opinions, offering the

following explanation:

> I give [Ms.]Thompson's opinion little weight because despite only beginning to treat
> in February 201[3], she indicated the limitations as she assessed were at the level
> assessed as of September 2011.
>
> Further, I note Ms. Thompson established six treatment goals for the claimant and
> three of the stated goals were met in 2 weeks, including the goal to complete a 10 M
> walk without an increase in lumbar spasm.  Additionally, I note the functional
> limitations Ms. Thompson reports are those reported to her by the claimant. [Her]
> report included decreased tolerance to functional activities of daily living as well as
> decreased management in self-interest activities such as playing with his daughter.
> Along with a decreased ability to lift, push, and pull and decreased tolerance to
> donning and doffing his shoes, to supine to sit activity, to sit to stand activities, to
> ambulation tolerance and sleep disturbance.  Ms. Thompson's examination findings
> do not support her opinions and I find her prognosis and findings are based in

---

[1]  Dr. Thompson simultaneously opined that Petitioner can never climb ladders.  *See* (AR
637).

**MEMORANDUM DECISION AND ORDER - 8**

significant part upon the subjective complaints of the claimant, not upon her personal observations or clinical findings.

(AR 59).  These criticisms are a stream-of-consciousness in the ALJ's decision, making it difficult to fully comprehend the ALJ's consideration of Dr. Thompson's opinions.  Suffice it to say, however, the ALJ found Dr. Thompson's opinions insufficient to support Petitioner's claims.  The reasons provided, however, are fundamentally lacking for at least two reasons.

First, it is true that, despite first seeing Petitioner in February 2013, Dr. Thompson indicated that Petitioner's "condition has existed and persisted with the restrictions [reflected in the "Medical Source Statement"] . . . since at least September 2011."  (AR 638).  While such a gap in time might be a reason for questioning a treating physician's opinions concerning *pre*-treatment impairments/limitations, that fact alone is not a sufficient reason to reject the opinions outright – particularly when, as Dr. Thompson stated, her opinion was based upon a review of the medical records for the purposes of preparing the "Medical Source Statement."  *See id*.  But the  ALJ did just that – rejected the treating physician's opinion without any corresponding justification for why Dr. Thompson, as a treating physician, cannot offer opinions as to medical issues of her patient involving facts that may predate her treatment of Petitioner.  To be sure, this is what state examiners do when reviewing a claimant's medical file.

Moreover, the ALJ's conclusory dismissal of Dr. Thompson's opinions disregards the fact that Dr. Thompson separately found (during the course of actually treating Petitioner) that he (1) "walks with a slightly flexed unsteady gait"; (2) "sta[nds] leaning to one side or the other" and "is restless and actually uses his arms to ease the pressure on his low back"; (3) has increased pain with extension, side-to-side rotation and flexion"; (4) has positive straight leg raise bilaterally at less than 45 degrees"; (5) "needs assistance for all activities of daily living";

**MEMORANDUM DECISION AND ORDER - 9**

(7) "has tried physical therapy, injections, chiropractic and TENS unit without any significant improvement"; and (8) has "failed back surgery syndrome."  (AR 626, 627, 670, 678).  The ALJ did not discuss these findings at all and, thus, also did not provide any explanation for why such details did or did not support Petitioner's claim of disability.  *See Brown-Hunter v. Colvin*, 2015 WL 4620123, *4 (9th Cir. 2015) ("[A]lthough we will not fault the agency merely for explaining its decision with less than ideal clarity, we still demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review.  A clear statement of the agency's reasoning is necessary because we can affirm the agency's decision to deny benefits only on the grounds invoked by the agency.") (internal quotation marks and citations omitted).

Second, and more problematic, the ALJ's subsequent recitation of various treatment notes (without any citation to the record) misses the point when it comes to discounting Dr. Thompson's opinion.  That is, while the ALJ seemingly believed the notes to be from Dr. Thompson, they were, in fact, from an altogether *different* medical provider – Andrea Wise, Petitioner's physical therapist.  *See, e.g.*, (AR 534-536, 611-612) (*see also supra* (discussing Ms. Wise's opinions)).  In other words, to the extent the ALJ was trying to point to Dr. Thompson's examination notes to contradict the ultimate opinions reflected in her June 20, 2013 "Medical Source Statement," that effort failed when realizing the referenced examination notes were not Dr. Thompson's at all.  *See Brown-Hunter*, 2015 WL 4620123 at *4.[2]

---

[2]  Oddly, Respondent's briefing doesn't just ignore this point, it actively perpetuates the apples/oranges comparison.  *See* Resp.'s Brief, p. 8 (Docket No. 19) ("The ALJ also noted that Dr. Thompson established six treatment goals for Petitioner, three of the stated goals were met in 2 weeks, including the goal to complete a 10 M walk without an increase in lumbar spasm.") (citing (AR 59)).

**MEMORANDUM DECISION AND ORDER - 10**

These issues, considered in combination or individually, reflect a situation where the ALJ's reasons for giving Dr. Thompson's opinions only "little weight" are neither clear and convincing, nor specific and legitimate.  Remand is therefore required in this respect.

b.    *Dr. Richard Manos*

Dr. Manos, Petitioner's orthopedic surgeon, completed a "Lumbar Spine Medical Source Statement" on December 7, 2012, diagnosing Petitioner with a compression fracture and degenerative herniations.  (AR 461).  Dr. Manos indicated that Petitioner (1) experiences numbness, tingling, insomnia, and pain (8 out of 10); (2) has neuro-anotomic distribution of pain; (3) has reduced range of motion; (4) can walk a quarter of a block without rest or severe pain; (5) can sit for 10 minutes at a time; (6) can stand for 0-5 minutes at a time; (7) can sit for less than two hours per day and stand/walk for less than two hours per day; (8) requires a position that permits shifting positions at will; (9) needs to walk around during an eight hour day for five minutes every hour; (10) needs to take unscheduled breaks; (11) can occasionally carry 20 pounds, but never 50 pounds; (12) can rarely crouch/squat and climb ladders/stairs, but never twist or stoop/bend; (13) would be "off task" 20% of the time; and (14) is capable of "low stress work."  (AR 58) (citing (AR 461-464)).

The ALJ also assigned only "little weight" to Dr. Manos's opinions, explaining this time:

> I give this opinion little weight because the medical source statement was prepared while the claimant was recovering from back surgery and prior to his referral to physical therapy.  On January 2, 2013, the claimant saw Dr. Manos for follow-up care.  At this time, the claimant presented with complaints of back pain and ambulated with an extremely guarded posture.  Dr. Manos noted the claimant appeared alert and oriented to self and location but "had poor body awareness of reports of symptoms secondary to reports of chronic pain and difficulty distinguishing one are to the other."  The doctor indicated the claimant would benefit

**MEMORANDUM DECISION AND ORDER - 11**

from skilled physical therapy services to address his limitation in functional ability. The claimant saw Dr. Manos again on March 25, 2012, at this time, the claimant presented with complaints of some stiffness and pain in the low back and some left leg pain but told the doctor he was doing better than before surgery. His physical examination of the claimant revealed the incisions were well healing and no edema, erythema or drainage. The motor evaluation of the lower extremities was 5/5, deep tendon reflexes were bilaterally symmetric and sensation was grossly intact throughout. The imaging taken that day revealed the hardware was in good position with no migration or complication. Thus, I find the medical source statement of Dr. Manos is inconsistent with his treatment notes, when considered as whole, which suggested the claimant was doing well in December 2012 after his surgery and that the claimant stated he was doing better than before the surgery. Further, as discussed above, the claimant's subjective complaints are not corroborated by the doctor's objective findings.

(AR 58). Similar to his criticism of Dr. Thompson's opinions, the ALJ's criticisms of Dr. Manos reflect a seemingly random excision of information taken from elsewhere in the record – albeit with the same conclusion that the ALJ will not rely upon Dr. Manos's opinions in any significant way. Somewhat ironically, however, those reasons suffer from the same shortcomings.

Although an ALJ may properly question a treating physician's opinions by pointing to that provider's later-in-time treatment notes belying his earlier opinions, here, the ALJ did not successfully do that. *See, e.g.*, 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent an opinion is within the record as a whole, the more weight we will give to that opinion."). Instead, as before, the ALJ cited to records incorrectly attributed to Dr. Manos. For example, the above-referenced January 2, 2013 visit was with Petitioner's physical therapist, Andrea Wise, not Dr. Manos (he is simply listed as the referring physician). (AR 535-537). Even apart from that factual disconnect, the ALJ does not specify how Ms. Wise's notes detract from the opinions contained within Dr. Manos's December 7, 2012 "Lumbar Spine Medical Source Statement."

**MEMORANDUM DECISION AND ORDER - 12**

The reference to the "March 25, 2012 visit" to Dr. Manos is no different – indeed, it is arguably worse.  There is no March 25, 2012 visit.  From the Court's own review of the record, the ALJ likely was intending to reference Dr. Manos's December 7, 2012 treatment note[3] which is the *same date* as Dr. Manos's "Lumbar Spine Medical Source Statement."  Therefore, the ALJ cannot accurately say that this treatment note is somehow inconsistent with the opinions contained in the more-or-less contemporaneous "Lumbar Spine Medical Source Statement."  *See Brown-Hunter*, 2015 WL 4620123 at *4

Once again, these issues highlight in the Court's mind a situation where the ALJ's reasons for giving Dr. Manos's opinions only "little weight" are neither clear and convincing, nor specific and legitimate.  Remand is therefore appropriate in this additional respect.

### c.    *Physical Therapist Andrea Wise*

On March 15, 2013, Petitioner's physical therapist Andrea Wise completed a "Lumbar Spine Medical Source Statement," identifying Petitioner's diagnoses as: "lumbar fusion L3-S1 anterior [and] posterior surgical approach," with a "fair to poor" prognosis.  (AR 542).  Though she acknowledges an inability to comment on Petitioner's specific work-related restrictions, PT Wise did opine that Petitioner (1) is unable to tolerate prolonged walking (888 feet in six minutes); (2) is unable to stand more than 5-15 minutes; (3) experiences pain, potential for emotional distress, decreased social interaction, decreased mobility, a decreased tolerance to

---

[3]  It is possible that the ALJ simply misread Petitioner's referenced birth date at the top of the page – March 25, 1977 – as a March 25, 2012 treatment note.  *See* (AR 538).  Regardless, the same information contained within the ALJ's decision (and quoted herein (*see supra*)) is found nearly verbatim within December 7, 2012 treatment note.  *See* (AR 538-539).  The ALJ even makes explicit reference to "Exhibit 11F at 21" which is the December 7, 2012 treatment note.

**MEMORANDUM DECISION AND ORDER - 13**

activities of daily living, and is unable to tolerate one position for a long period of time (beyond 20 minutes); (4) has constant pain throughout his back, left leg, left hip, with increasing right leg pain; (5) has neuro-anotomic distribution of pain; (6) has reduced range of motion, sensory and reflex loss, muscle weakness, abnormal gait, muscle spasms, motor loss, swelling, tenderness, crepitus, and impaired sleep; (7) can sit for 20 minutes at a time; (8) can sit for less than two hours per day and stand/walk for less than two hours per day; (9) can rarely crouch/squat and climb stairs, but never twist, stoop/bend, or climb ladders; and (10) would be "off task" more than 25% of the time. (AR 58-59 (citing (AR 542-545)).

Relevant here, the ALJ assigned only "little weight" to PT Wise's opinions, stating:

> In March 2013, at the time the medical source statement was completed, the claimant had had seven PT visits with Ms. Wise and five cancellations. At the time, the records indicated he was able to walk 888 feet in six minutes and could sit for 20 minutes. For these reasons, I give the opinion of Ms. Wise little weight. Initially, I afford little weight because Ms. Wise is not an acceptable medical source according to Agency regulations. Secondly and more importantly, her treatment records fail to support her description of the claimant's symptoms and limitations.

(AR 59). The ALJ's criticisms of PT Wise's opinions, albeit less deficient than those submitted in opposition to Dr. Thompson's and Dr. Manos's opinions, are nonetheless lacking.

First, that Petitioner cancelled five appointments is not illustrative of anything. Perhaps Petitioner cancelled these appointments only to reschedule them during one of his other seven visits with PT Wise; perhaps there are other benign explanations. Regardless, the ALJ does not explain why five cancelled appointments compromise PT Wise's opinions, particularly when that same March 11, 2013 treatment note goes on to state in no uncertain terms:

> This patient continues to have significant limitation in his tolerance to activity without recurrence of pain and muscle guarding. He has shown some mild functional improvements, and I feel he would be appropriate to continue with physical therapy treatment to help him continue to make functional gains.

**MEMORANDUM DECISION AND ORDER - 14**

(AR 527).  It is as if the fact of the cancelled appointments is *sub silentio* evidence of
malingering by the Petitioner, in the mind of the ALJ, but without a statement saying as much,
and without an explanatory link to justify such a conclusion.

Second, the ALJ's suggestion that PT Wise's opinions are not supported by her treatment
notes fails to connect the dots.  Specifically, the ALJ does not explain how Petitioner's ability to
walk 888 feet in six minutes and sit for 20 minutes compromises PT Wise's opinions or supports
a finding that Petitioner is capable of performing light work when the opposite may very well be
the case.  *See, e.g.*, 20 C.F.R. §§ 404.1567(b), 416.967(b) ("Light work involves lifting no more
than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pound.
Even though the weight lifted may be very little, *a job is in this category when it requires a good
deal of walking or standing, or when it involves sitting most of the time with some pushing and
pulling of arm or leg controls*.  To be considered capable of performing a full or wide range of
light work, you must have the ability to do substantially all of these activities.") (emphasis
added).

Third, even though opinions from physical therapists are not "acceptable medical
sources" for evidence of an impairment, the Social Security regulations permit a claimant to
submit information from "other sources" (including physical therapists) to show the severity of
an impairment and "understand how [the claimant's] impairment affects [the claimant's] ability
to work."  20 C.F.R. §§ 404.1513(d), (e).  The ALJ may reject other source testimony by
furnishing reasons germane to that particular witness.  *See Dodrill v. Shalala*, 12 F.3d 915, 919
(9th Cir. 1993).  Social Security Ruling 06-03p states: "the fact that a medical opinion is from an
'acceptable medical source' is a factor that may justify giving that opinion greater weight than an

**MEMORANDUM DECISION AND ORDER - 15**

opinion from a medical source who is not an 'acceptable medical source.'" SSR 06-03p,

available at 2006 WL 2329939.  However, this ruling also recognizes that depending on the

particular facts in a case, an "opinion from a medical source who is not an 'acceptable medical

source' *may outweigh* the opinion of an 'acceptable medical source' . . . ." *Id.* (emphasis added).

In other words, the ALJ cannot ignore the opinion of PT Wise simply because it falls into the

category of "not an acceptable medical source" – while it is true that the ALJ need not accept her

opinion on the ultimate issue of disability (assuming PT Wise even provided one), that is not a

germane reason for rejecting the totality of her opinions, which reflects considerable functional

limitations.

     For these reasons, and because this action is to be remanded to more fully address the

opinions of Drs. Thompson and Manos (*see supra*), the ALJ is advised to also consider the

opinions of PT Wise on remand, consistent with the above-cited authority relating to opinions

from a medical source who is not an "acceptable medical source."[4]

     2.    <u>Whether Petitioner's Impairments Met or Equaled a Listed Impairment</u>

     Petitioner next argues that the ALJ failed to offer the requisite analysis when considering

whether Petitioner's alleged impairments met or equaled a listed impairment for disability

determination purposes.  *See* Opening Brief, pp. 16-17 (Docket No. 14).  As discussed above, an

ALJ must evaluate the claimant's impairments to see if they meet or equal any of the

impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  *See supra*.  If

any of the impairments meet or equal a listed impairment, the claimant is deemed disabled.  *Id.*

---

    [4]  Separately, it is further advised that, on remand, the ALJ consider Petitioner's
arguments concerning whether the June 2012 imaging studies would have mattered to the
earlier-in-time opinions from Dr. Crites and Dr. Arnold.  *See* Opening Brief, p. 15 (Docket No.
14) ("Clearly, objective evidence that was not available until after their opinions were given
show that they did not accurately include all of Mr. Tidmarsh's limitation in their RFC
assessments.").

**MEMORANDUM DECISION AND ORDER - 16**

An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." *See* SSR 83-19, available at 1983 WL 31248; *see also* 20 C.F.R. § 404.1525. An impairment equals a listed impairment only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed impairment. *See Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

"An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment" does not meet or equal a listed impairment. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). However, the ALJ is not required to state why a claimant fails to satisfy every criteria of the listing if they adequately summarize and evaluate the evidence. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir. 1990); *Lewis*, 236 F.3d at 512.

Petitioner contends that his spinal impairments meet Listing 1.04A, which requires that the following criteria be met:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With . . . [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A; Opening Brief, p. 16 (Docket No. 14). Here, the ALJ recognized Petitioner's "degenerative disc disease status post two spinal fusions" as constituting a severe impairment, but ultimately concluded that it:

**MEMORANDUM DECISION AND ORDER - 17**

does not meet the requirements of Listing 1.04 (disorders of the spine) because there is no evidence of nerve root compression characterized by a neuro-anatomic distribution of pain, motor loss accompanied by sensory or reflex loss; or spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication.

(AR 54).  That was the extent of the ALJ's analysis, though she did go on to immediately discuss Petitioner's residual functional capacity and certain of the medical evidence in the record in that latter respect.  (AR 54 -60).  As this matter has unfolded thus far, however, that is not enough.

The ALJ's determination at step three of the sequential process is less of an *analysis* of the medical record as much as it is a regurgitation of each medical provider's findings.  But, because the ALJ did not provide sufficient reasons for rejecting certain providers' opinions (*see supra*), their opinions speaking to the issue of whether Petitioner meets Listing 1.04A cannot be ignored, which is what the ALJ appears to have done – again, there is not much by way any meaningful analysis.  For example, Dr. Thompson notes that Petition has neuro-anotomic distribution of pain and reduced range of motion at the lumbosacral joint due to pain.  *See supra* (citing (AR 635-636)).  Dr. Manos indicates that Petitioner has an impinged nerve root; has neuro-anotomic distribution of pain; has reduced range of motion; and has muscle weakness. *See supra* (citing (AR 461-462)).  And PT Wise states that Petitioner has neuro-anotomic distribution of pain; has reduced range of motion; has positive supine and seated straight-leg raising tests; and has sensory loss, reflex loss, motor loss, and muscle weakness.  *See supra* (citing (AR 542-543)).  It is possible that these findings, if considered, could support a conclusion that Petitioner's impairments meet Listing 1.04A.

It is not this Court's function to resolve definitively this issue.  Rather, the point here is that the Court is to review the basis of the ALJ's decision.  Perhaps the Petitioner has not met all the criteria of Listing 1.04A; perhaps he has.  What is significant for these purposes is that the

**MEMORANDUM DECISION AND ORDER - 18**

ALJ has not properly evaluated the treating physicians' opinions as to this issue (*see supra*). Simply put, the Court cannot say here that the ALJ appropriately determined that Petitioner's impairments met or equaled a listed impairment. Remand is therefore necessary in this additional respect.[5]

### 3.   Petitioner's Credibility

Petitioner contends that the ALJ erred by failing to properly evaluate his credibility. *See* Opening Brief, pp. 18-20 (Docket No. 14). The ALJ ruled "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," before concluding that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (AR 55).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where, as here, the Petitioner has presented evidence of an underlying impairment and the government does not argue that there is evidence of malingering, the Court reviews the ALJ's rejection of his testimony for specific, clear and convincing reasons. *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including consideration of claimant's reputation for truthfulness and inconsistencies

---

[5] The Court is mindful that, in the event the ALJ finds Petitioner's impairments to meet or equal a listed impairment, disability benefits will be awarded. However, if, following remand, the ALJ supports her original determination with substantial evidence consistent with these findings, the sequential process proceeds. It is with this latter consideration in mind that the Court considers all of Petitioner's other objections to the ALJ's August 1, 2013 decision.

**MEMORANDUM DECISION AND ORDER - 19**

in claimant's testimony, or between claimant's testimony and conduct, as well as claimant's daily activities, claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains.  *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).  Also, the ALJ may consider location, duration, and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms.  *See* SSR 96-7p, available at 1996 WL 374186.

Preliminarily, it must be said that, to the extent the ALJ relied upon the medical record in reaching her credibility determination, that landscape has changed in light of this Memorandum Decision and Order.  If, following remand, the opinions of Petitioner's treating physicians are taken into account in ways not currently expressed in the ALJ's decision (*see supra*), the ALJ's analysis of Petitioner's credibility may change to reflect the full panoply of factors going into such a decision.

Further, on remand, the ALJ is advised to reconcile the potential discrepancy between the ALJ's statements concerning Petitioner's credibility at the July 3, 2013 hearing and her subsequent, contrary August 1, 2013 decision.  On the one hand, during the hearing, the following colloquy took place between the ALJ and the Petitioner's attorney:

> ATT:  Okay.  All right.  Your honor, I think those are all of the questions I have. We could bring in the first witness.

> ALJ:  All right.  What these witnesses going to testify to that he has not testified to?

> ATT:  They're – you know, they may not testify as to anything.  It's just a matter of credibility.  They have a certain perspective –

> ALJ:  *I have no problem with credibility, so do we need these witnesses?*

> ATT:  No.  If you're willing to accept the limitations as he's explained them, then –

**MEMORANDUM DECISION AND ORDER - 20**

ALJ:   I'm not willing to accept the limitations as – the limitations as verified in file *but I'm willing to accept that his testimony is credible.*

ATT:   They're going to be testifying just to different things with respect – for example, the grandmother's going to testify that – to things related to his memory and concentration.  And his wife's going to testify as to things she does for him that he doesn't do for himself.

ALJ:   And he's already testified to both of those – correct?

ATT:   Yes, for the most part.

ALJ:   I have no problem with you submitting written statements from them.

ATT:   Okay.

ALJ:   If you'd like to do that.

ATT:   Yeah, that would be fine – as long as – well, I mean – yeah, that should be fine, your honor.  I mean, they're not sworn, but –

ALJ:   All right.  Okay.

PET:   You have written statements, do you?

ATT:   Yeah, I think we have written statements . . . .

ALJ:   All right.  Then let's go ahead and go with the vocational expert.

(AR 85-86) (emphasis added).  Yet, on the other hand, the ALJ ultimately found Petitioner's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [to be] not entirely credible . . . ."  *See supra* (citing (AR 55)).  Perhaps there is a way to harmonize this anomaly; however, thus far, that is not apparent from the record.

Finally, with respect to any credibility analysis conducted upon remand, it should be kept in mind that, even though an ALJ may discredit a claimant's allegations if the claimant engages in numerous daily activities involving skills that could be transferred to the workplace (provided

**MEMORANDUM DECISION AND ORDER - 21**

the ALJ makes specific findings relating to those activities), "the mere fact that a [claimant] has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability." *Vertigan v.* Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). "The Social Security Act does not require that claims be utterly incapacitated to be eligible for benefits and many home activities are not easily transferable to what may be the more grueling environment of the workplace . . . ." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Here, it could be argued that the ALJ made such an inappropriate determination, perhaps being improperly swayed by his ability to care for his daughter (*see* (AR 56)) "in a way that gave insufficient heed to the tenuous grasp [he] had upon such functions," in the face of his understood, and recognized, severe impairment. *McKay v. Astrue*, 2011 WL 4583905, *6 (D. Idaho 2011).

Together, these situations operate to question whether the ALJ offered clear and convincing reasons for doubting Petitioner's credibility.

## IV.  CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *See Allen*, 749 F.2d at 579; *Vincent ex. Rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's a reviewing court may not substitute its interpretation for that of the ALJ. *See Key*, 754 F.2d at 1549.

However, here, the reasons given for rejecting Dr. Thompson's, Dr. Manos's, and PT Wise's opinions rely in part on factual errors and are therefore not properly supported. If

**MEMORANDUM DECISION AND ORDER - 22**

appropriate after reconsideration on remand, the ALJ should further examine whether Petitioner meets a listed impairment, reassess Petitioner's credibility, and reconsider any other impacted matter, including hypotheticals posed to the vocational expert at the July 3, 2013 hearing.

This is not to say that this Court conclusively find that Petitioner is disabled. Relatedly, it is not for this Court to resolve the question of whether Petitioner is disabled when considering all the relevant medical evidence and how Petitioner's treating physicians' opinions, coupled with Petitioner's own testimony, may factor into the ALJ's determination. Rather, the Court has reviewed the basis of the ALJ's decisions, highlighted those areas that may call into question the decisions reached by the ALJ and, in doing, should not be misunderstood as substituting its own judgment for that of the ALJ.

The Court finds the cumulative nature of the ALJ's decision does not afford the Court confidence under the applicable standard of review that the ALJ fairly considered/applied all the evidence in the record, at least how it is reflected in the ALJ's decision. This action is therefore remanded to allow the ALJ to revisit the opinions of Petitioner's treating physicians, whether Petitioner's impairment(s) meet or equal a listed impairment, and Petitioner's credibility.

## V.  ORDER

Based on the foregoing, Petitioner's Complaint/Petition for Review (Docket No. 1) is hereby GRANTED. This matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order.

DATED:  **September 30, 2015**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 23**